FILED
2008 Feb-07 PM 03:14
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| **DOLORES M. REED**, | ] |
| | ] |
| **Plaintiff,** | ] |
| | ] |
| v. | ]   CV-07-BE-1255-E |
| | ] |
| **WOMEN'S ARMY CORPS** | ] |
| **VETERANS' ASSOCIATION, et al.,** | ] |
| | ] |
| **Defendants.** | ] |

## MEMORANDUM OPINION

Before the court is Defendants' Motion to Dismiss (doc. 28) Plaintiff's amended complaint (doc. 17). Having reviewed all of Defendants' and Plaintiff's submissions in connection with the motion, the court finds that Defendants' motion is due to be GRANTED for the reasons stated below. By separate order, the court will DISMISS WITH PREJUDICE Plaintiff's complaint, which asserts only a defamation claim.

### I. BACKGROUND[1]

At the time relevant to her lawsuit, Plaintiff Dolores Reed, a resident of the State of New York, was the chairperson of the Financial Investments Committee of Defendant Women's Army Corps Veterans' Association ("WACVA"), a non-profit corporation incorporated under the laws of the District of Columbia with its principal place of business in Alabama. The Financial Investments Committee makes recommendations concerning the investment and reinvestment of WACVA's investment funds. By virtue of Reed's position as chairperson of the Financial

---

[1] The appropriate standard of review requires this court to assume as true all facts alleged in the complaint and to construe all allegations in the light most favorable to the Plaintiff, and the court has done so.

Investments Committee, she was also a member of WACVA's Board of Directors.

On Thursday, May 3, 2007, Suzanne LaRocca, WACVA's Treasurer, informed Reed by email that LaRocca needed to withdraw an unspecified amount from WACVA's invested funds. Reed responded that she would attempt to contact other committee members, the Investment Consultant, and Defendant Mildred "Pam" Styx, President of WACVA. Reed then consulted with a former chairperson of the Financial Investments Committee and a former WACVA President, both of whom indicated that no clear rules existed for such withdrawals, but that Reed should notify, and seek approval from, the President or Executive Board.

The following Monday, May 7, 2007, LaRocca again emailed Reed, informing her that she had already made the monetary transfer pursuant to prior authorization and that no second approval was required by Reed or the Financial Investments Committee. In response, Reed complained that the Financial Investments Committee should have been consulted and indicated that no future withdrawals should be made without such consultation. Later that same day, Defendant Styx emailed Reed, stating her opinion that the money should not have been withdrawn without proper approval. Defendant Styx had not yet spoken with LaRocca.

After speaking with LaRocca, Defendant Styx again emailed Reed on May 8, 2007. Styx indicated that withdrawals up to a specified amount were approved at WACVA's 2007 convention. Styx indicated that she had forgotten about this approval and that LaRocca's actions were proper. Reed and Styx subsequently spoke by telephone. They had "differing opinions" regarding the Treasurer's authority to withdraw funds without Reed's and the Financial Investments Committee's approval.

On May 11, 2007, Defendant Styx mailed a ballot on WACVA stationery to the Board of Directors in which she requested a vote to remove Plaintiff Reed from her position as

chairperson of the Financial Investments Committee. After explaining Styx's view of the proper roles of the Treasurer and Financial Investments Committee, the letter described Reed as "argumentative" and "very disrespectful." It further stated that "[n]o one is right except her [*i.e.*, Reed]" and that Reed "will not listen rationally . . . ." Subsequently, Plaintiff sent a letter to Styx alleging libel. In that letter, Reed threatened a lawsuit, but indicated that one could be avoided if Styx "revok[ed] the action [*i.e.*, the request for Reed's removal]." The Board voted forty-one to five (with three abstentions) to remove Plaintiff Reed from her position. Approximately twenty-five ballots were not returned.

Reed then sent a "Demand Letter" to Styx, requesting monetary compensation for damage to her reputation and again threatening legal action if WACVA did not comply. Styx forwarded the letter to the Board of Directors. Styx refused to reinstate Reed and rescind her statements, and Reed filed a complaint of defamation in this court. Reed alleges that Styx alone could have removed Reed from her position, but she instead "maliciously" chose to disseminate "defamatory statements" to a "larger audience unreasonably embarrassing Plaintiff throughout the entire national population." Reed alleges that Styx made similar statements in follow-up letters and emails.

Plaintiff alleges that, as a result of Styx's statements, she "has suffered irrevocable damage to her reputation, has suffered diminished rights to peaceably enjoy membership in WACVA and other organizations, and has suffered seriously diminished right to speak out, unharmed by that damage, on issues confronting those organizations." Although she claims that the "value of her reputation is incalculable," she seeks $10,000 damages for each of the approximately seventy ballots as an "amount that exemplifies the vastness of the damage."

Defendants moved to dismiss the amended complaint on November 19, 2007. Both Defendants and Plaintiff briefed the issues.[2]

## II. STANDARD OF REVIEW

A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of a claim. Generally, the Federal Rules of Civil Procedure require only that the complaint provide "'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957); *see also* Fed. R. Civ. P. 8(a). A plaintiff must provide the grounds of her entitlement to relief, but Rule 8 generally does not require "detailed factual allegations." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007) (quoting *Conley*, 355 U.S. at 47). "[S]tating such a claim requires a complaint with enough factual matter (taken as true) to suggest" the required element. *Id.* at 1965.

In evaluating a motion to dismiss, the court assumes that all factual allegations set forth in the complaint are true, *United States v. Gaubert*, 499 U.S. 315, 327 (1991), and construes all factual allegations in the light most favorable to the plaintiff. *Brower v. County of Inyo*, 489 U.S. 593, 598 (1989). Ordinarily, the court does not consider anything beyond the complaint in ruling upon a motion to dismiss and, thus, must convert a motion to dismiss into a motion for summary judgment "once the court decides to accept matters outside the pleading." *Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1260 (11th Cir. 2006) (citations omitted). Both Plaintiff's and

---

[2] Plaintiff's brief is among the most well-presented *pro se* briefs this court has ever received. Although her arguments evidence a misunderstanding of both substantive law and procedural rules employed by federal courts, she nonetheless researched and cited legal authority. In addition, perhaps recognizing the difficulty of pleading damages in many defamation cases, Plaintiff deferred to William Shakespeare, who described the immeasurable value of a person's reputation far more eloquently than most lawyers. The court commends Plaintiff on her efforts to research the law and present her arguments cohesively. In the end, however, Defendants accurately and persuasively stated the applicable law, and this court must dismiss Plaintiff's complaint for the reasons stated in this memorandum opinion.

Defendants' submissions to the court refer numerous times to the allegedly defamatory letter, as well as to emails between Plaintiff and various individuals.

However, the court need not convert the motion to dismiss into a motion for summary judgment. Plaintiff attached the letter[3] and emails as exhibits to her amended complaint and, therefore, they constitute part of the pleading that the court may properly consider without converting Defendants' motion to dismiss into a motion for summary judgment. *Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002) (citing Fed. R. Civ. P. 10(c) ("A copy of any written instrument which is an exhibit to a pleading is part thereof for all purposes.")).

Even if Plaintiff had not attached the letter to her complaint, the court could nonetheless consider it in ruling upon the motion to dismiss because Plaintiff's amended complaint quotes from the letter, the letter is central to Plaintiff's claim of defamation, and no party has disputed the letter's authenticity. *Hoffman-Pugh v. Ramsey*, 312 F.3d 1222, 1225 (11th Cir. 2002) ("The 'publication' at issue here . . . was properly before the court on the motion to dismiss because Hoffman-Pugh referred to it in her complaint and it is central to her claims."); *see also Horsley*, 304 F.3d at 1134.

### III. DISCUSSION

Defendants first argue that Defendant Styx's comments were her own opinions based on nondefamatory facts and, therefore, failed to constitute an actionable claim of defamation. In response, Plaintiff argues that "Defendants have no standing under the laws of Alabama" and that

---

[3] Plaintiff's amended complaint, as originally filed, and Defendant's motion to dismiss and supporting brief quote from the letter and refer to the letter as "exhibit 10" to the amended complaint. Exhibit 10, however, was apparently inadvertently omitted from Plaintiff's submission to the court; the exhibits progressed from number 9 to number 11. Upon notification from the court of the omission, Plaintiff emailed the letter, which she intended to attach as Exhibit 10 to her amended complaint, to the undersigned's chambers. The clerk docketed the letter in the appropriate place.

her complaint "is brought as a violation of her rights under the First and Fourteenth Amendments to the U.S. Constitution."

The First Amendment provides that "Congress shall make no law . . . abridging the freedom of speech." Thus, by its very terms, the First Amendment proscribes the conduct of government actors, not private citizens. *See Pub. Utils. Comm'n of D.C. v. Pollak*, 343 U.S. 451, 461 (1952) (holding that the First Amendment applies "to and restrict[s] only the Federal Government and not private persons."); *Kinsey v. King*, 2007 WL 2753036, at *2 (11th Cir. Sept. 24, 2007) (dismissing *pro se* complaint for lack of jurisdiction because plaintiffs "have not alleged state action and '[t]he Fourteenth Amendment, and, through it, the First and Fifth Amendments, do not apply to private parties unless those parties are engaged in activity deemed to be 'state action.'"" (quoting *Nat'l Broad. Co. v. Commc'ns Workers of Am.*, 860 F.2d 1022, 1024 (11th Cir.1988)). Plaintiff's amended complaint alleges that WACVA is a non-profit organization, but makes no factual allegations indicating that WACVA is a state actor. Consequently, the complaint does not allege a cause of action under the First Amendment.

Rather, Plaintiff's complaint was clearly styled as a defamation action. She refers to the lawsuit as "[t]his libel per se action" and repeatedly alleges that Styx's comments were "defamatory." Her requested damages are for "damage to her reputation." The complaint makes no factual allegations supporting another cause of action under the First or Fourteenth Amendments to the U.S. Constitution. Having concluded that Plaintiff attempts to bring a cause of action for defamation, the court now turns to the law of defamation.

Plaintiff Reed chose to file her complaint in the Northern District of Alabama because the allegedly defamatory letter was mailed from this jurisdiction. She alleges that this court has jurisdiction over the matter based on diversity of citizenship. To establish the appropriate law to

apply in such a case, the court must apply the choice of law rules of the forum state. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487 (1941).  Subscribing to the doctrine of *lex loci delicti*, Alabama law applies the law of the place where the wrong was committed or where the injury occurred.  *Morris v. SSE, Inc.*, 912 F.2d 1392, 1396 (11th Cir. 1990); *Griese-Traylor Corp. v. First Nat'l Bank of Birmingham*, 572 F.2d 1039, 1044 (5th Cir. 1978).

This case involves many states.  Plaintiff is a citizen of New York; Defendant Styx is a citizen of Florida; the allegedly defamatory letters were mailed from Alabama; the members of the Board of Directors who received the letters apparently lived throughout the United States.  Was the wrong committed in Florida, where Styx presumably drafted the allegedly defamatory letter?  Or was the wrong committed in Alabama, from whence the letter was mailed?  Did the alleged injury to Plaintiff occur in New York, where she lives?  Or did it occur in numerous states, where recipients of the letter read it?

The court concludes that it must look to either Alabama law or New York law. The only action even implied to have taken place in Florida was Styx's drafting of the letter.  Writing statements in the privacy of one's home, or even workplace, however, is not actionable. Not until such writings are "published" could a wrong occur.  Plaintiff makes no attempt to identify the states in which all the letter's recipients reside, and the court likely could not determine if the alleged injury to Plaintiff's reputation was more severe in one state rather than the others.  Thus, the court is left with the options of Alabama and New York.  One may argue that "publication" -- the wrong -- occurred in Alabama when the letters were mailed.  One may likewise argue that the injury occurred in New York where Plaintiff personally felt it.  Fortunately, the court does not have choose between Alabama and New York to decide the current motion because no conflict exists in the laws of the two states.

Both Alabama and New York recognize the principle that a statement is not actionable for defamation if it is merely "an expression of an opinion based upon disclosed, nondefamatory facts." *Sanders v. Smitherman*, 776 So. 2d 68, 74 (Ala. 2000); *see also Rinaldi v. Holt*, 366 N.E.2d 1299, 1306 (N.Y. 1977); Restatement (Second) of Torts § 566 cmt. c (1977) ("A simple expression of opinion based on disclosed or assumed nondefamatory facts is not itself sufficient for an action of defamation, no matter how unjustified and unreasonable the opinion may be or how derogatory it is."). That is, one cannot recover in a defamation action because of another's statement of opinion -- regardless of how derogatory the statement may be -- so long as nondefamtory facts upon which the opinion is based are either disclosed or assumed. *Sanders*, 776 So. 2d at 74 (citing Restatement (Second) of Torts § 566 cmt. c); *Rinaldi*, 366 N.E.2d at 1306. "This is so because the recipient of the information is free to accept or reject the opinion, based on his or her independent evaluation of the disclosed, nondefamatory facts." *Sanders*, 776 So. 2d at 74 (citing *Redco Corp. v. CBS, Inc.*, 758 F.2d 970, 972 (3d Cir. 1985), *cert. denied*, 474 U.S. 843 (1985)); *see also Penn Warranty Corp. v. DiGiovanni*, 810 N.Y.S.2d 807, 814 (N.Y. Sup. Ct. 2005) (noting that libel *per se* claims are subject to the defense that a reasonable person reading the material in context would perceive it to be nothing more than a matter of personal opinion).

In the allegedly defamatory letter, Defendant Styx, citing to the 2007 WACVA Convention minutes, first describes the Treasurer's authority to withdraw funds to cover operating expenses. She then describes the roles of the Financial Investments Committee Chairperson and the WACVA President. Next, she indicated that Plaintiff Reed, by letter to many WACVA members, had suggested certain legal action contrary to the advice of WACVA's attorneys. Only after the paragraphs just described did Defendant Styx conclude that Plaintiff

was "argumentative" and "disrespectful."  After receiving the letter, Plaintiff sent a letter to Styx demanding that she revoke the letter, and subsequently sent a demand letter (apparently after the vote) stating her position and requesting monetary damages; a letter attached to Plaintiff's amended complaint indicates that Defendant Styx forwarded Plaintiff's demand letter to all members of the Board of Directors.

Plaintiff cannot dispute that Defendant Styx's letter included a recitation of nondefamatory facts and an implication that the Reed disagreed as to the scope of the Treasurer's authority to withdraw funds without approval; the letter did not contain or assume any undisclosed <u>defamatory</u> facts.  The disclosed facts and the assumed fact that Reed disagreed with Styx are all nondefamatory.  Defendant Styx, of course, did not outline Plaintiff's position on these matters.  She need not.  Each recipient of the letter could look to the cited convention minutes, the by-laws, Robert's Rules of Order, or whatever documents she believed defined the respective roles of the Treasurer and Financial Investments Committee to determine for herself the correct procedure for withdrawals of investment funds.  Each recipient could then draw her own conclusion regarding the merits of Plaintiff's disagreement and Styx's stated position.  As used in the letter, Styx's adjectives represent only her own opinion based upon the dispute with Reed regarding proper procedures for monetary withdrawals.  Such expressions of opinion fail to meet the requirements for actionable defamation under either Alabama or New York law.  Accordingly, dismissal of Plaintiff's complaint is proper, and the court will grant Defendants' motion. Consequently, the court will not address the remainder of Defendants' arguments.

## IV. CONCLUSION

For the reasons stated above, the court will GRANT Defendants' motion to dismiss, and will DISMISS WITH PREJUDICE Plaintiff's sole count of defamation.  Defendant Styx's

allegedly defamatory comments were merely opinions based upon disclosed or assumed nondefamatory facts.  Therefore, Defendant Styx's statements are not actionable defamation. The court will enter a separate order consistent with this memorandum opinion.

DATED this 7th day of February, 2008.

_____
KARON OWEN BOWDRE
UNITED STATES DISTRICT JUDGE